## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**OSTROFF INJURY LAW PC**,

Plaintiff,

vs.

**UNITED STATES OF AMERICA**,

Defendant.

Case No.: ___2:24-cv-4097___

Date: August 8, 2024

## COMPLAINT

Plaintiff Ostroff Injury Law PC ("Plaintiff") brings this action against the United States for a refund of internal revenue taxes totaling $790,318.08 for 2020 and 2021. Under Coronavirus Aid, Relief, and Economic Security Act, PL 116-136, March 27, 2020, 134 Stat 281 (CARES Act) and section 3134 of the Internal Revenue Code (I.R.C.), Plaintiff is entitled to the Employee Retention Credits (ERC) described in this Complaint: (1) because Plaintiff meets the statute's significant-decline-in-gross-receipts test for the third and fourth quarters of 2020 and for the second and third quarters of 2021; and (2) because Plaintiff meets the partial-suspension test for the first quarter of 2021.

In support of this refund claim, Plaintiff alleges:

### I.   NATURE OF ACTION

1.  This is an action for recovery of employment taxes, including the refundable excess credit (together with statutory interest and any appropriate attorney's fees) paid for 2020 and 2021.

1

2.   In March 2020, in response to the COVID-19 pandemic, Congress provided an employee retention credit for 50 percent of up to $10,000 per employee of qualified wages for the year. At the end of 2020, Congress extended and expanded the credit. Employers could now claim the credit for the first and second quarters of 2021; the credit was also increased to 70 percent of up to $10,000 per employee of qualified wages for each quarter. And Congress later made that same credit available for the third quarter of 2021.

3.   One of the ways employers are eligible to claim this credit is by experiencing a significant decline in gross receipts (measured against a 2019 benchmark) during the last three quarters of 2020 or the first three quarters of 2021.

4.   As detailed below, Plaintiff experienced the required significant decline in gross receipts for the quarters in which Plaintiff claimed the ERCs at issue here.

5.   Employers are also eligible to claim ERC if, during the last three quarters of 2020 or the first three quarters of 2021, their business was "fully or partially suspended . . . due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." I.R.C. § 3134(c)(2)(ii)(I).

6.   As detailed below, Plaintiff's business was partially suspended due to government orders that meet the statutory criteria in the first quarter of 2021.

7.   Yet the IRS has failed to pay Plaintiff's appropriately filed ERC claims.

## II.     PARTIES

8.   Plaintiff is a Pennsylvania professional corporation that provides legal services to Pennsylvanians who have suffered life altering injuries because of serious accidents, medical malpractice, or abuse. Plaintiff's principal place of business is in Montgomery County, Pennsylvania.

9.   The Defendant is the United States of America.

## III.     JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1346(a)(1), and under 26 U.S.C. (I.R.C.) § 7422.

11. Venue in this Court is proper under 28 U.S.C. § 1402(a)(1).

12. This complaint is timely under 28 U.S.C. § 2401 and under I.R.C. §§ 6532 and 7422.

## IV.     LEGAL BACKGROUND

13. In March 2020, Congress passed the CARES Act, which created the employee retention credit (ERC). This credit is available to eligible employers for the last three quarters of 2020 and for the first three quarters of 2021.

14. Eligible employers are employers that carry on a trade or business or tax-exempt organizations that meet certain criteria. CARES Act § 2301(c)(2)(A)(i) & (C); I.R.C. § 3134(c)(2)(A)(i) & (C).[1]

---

[1] The current version of I.R.C. § 3134 became effective on November 15, 2021. As relevant here, it is identical to the prior version of I.R.C. § 3134 that was in effect from March 11, 2021, to November 14, 2021, and to the amended CARES Act in effect from January 1, 2021, to March 10, 2021. For ease of reference, this complaint cites I.R.C. § 3134 when discussing 2021 ERC requirements.

### A. Refundability of the credit

15. The amount of ERC is not limited to the amount of employment taxes the employers paid, and against which the credit is applied. Rather, if the amount of the credit exceeds the applicable employment taxes for the calendar quarter, "such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b)." CARES Act § 2301(b)(3); I.R.C. § 3134(b)(3).

### B. Aggregation Rule

16. All entities that are members of a controlled group of corporations or trades or businesses under common control under IRC §§ 52(a) or (b), members of an affiliated service group under IRC § 414(m), or otherwise aggregated under IRC § 414(o) are treated as a single employer for purposes of applying the Employee Retention Credit. CARES Act § 2301(d); I.R.C. § 3134(d).

### C. Significant Decline in Gross Receipts

17. One way an employer can be an "eligible employer" and thus qualify for the ERC is by experiencing a significant decline in gross receipts. The significant-decline-in-gross-receipts test is an objective test. Generally, employers are eligible for the ERC based on a comparison of the gross receipts of the employer in the quarter in which the credit is claimed to the same quarter in 2019. Certain continuation and lookback rules also can apply, as detailed below.

18. For quarters in 2020, employers qualify for the ERC under the decline-in-gross-receipts test if their gross receipts for the quarter decreased by more than 50 percent compared to the corresponding quarter in 2019. CARES Act § 2301(c)(2)(B). *For example*, if an employer had $100,000 in gross receipts in the second quarter of

2019 and less than \$50,000 in gross receipts in the second quarter of 2020, the employer is eligible to claim ERC for the second quarter of 2020.

19. After an employer becomes eligible to claim ERC based on a greater than 50 percent reduction in gross receipts for one quarter in 2020, the employer maintains that eligibility for the remainder of 2020 unless and until there is a quarter after a quarter in which the employer's gross receipts are more than 80 percent of the corresponding quarter in 2019. CARES Act § 2301(c)(2)(B). As IRS training materials explain,

> An employer is considered to have a significant decline in gross receipts for the period beginning with the first calendar quarter in 2020 for which its gross receipts are less than 50 percent of gross receipts from the same calendar quarter in 2019 and ending with the earlier of January 1, 2021, or the first calendar quarter after the quarter for which gross receipts are greater than 80 percent of gross receipts for the same calendar quarter in 2019.

*See* IRS ERC Training Guide 3-22 (Rev. 07/2022). In practical terms, this means that an employer that qualifies for the ERC based on a more than 50 percent reduction in gross receipts for the second quarter of 2020 is automatically eligible in the third quarter of 2020, and is eligible in the fourth quarter of 2020 so long as it had at least an 80 percent reduction in gross receipts in the third quarter of 2020 as compared to the third quarter of 2019. *For example*, an employer with gross receipts of 45 percent of the corresponding quarter in 2020 Q2, 85 percent of the corresponding quarter in 2020 Q3, and 75 percent of the corresponding quarter in 2020 Q4 would qualify for the ERC in 2020 Q3, but would not qualify for the ERC under the reduction-in-gross-receipts test in Q4. However, an employer with gross receipts of 45 percent of the corresponding quarter in 2020 Q2, 79 percent of the corresponding quarter in 2020

Q3, and 120 percent of the corresponding quarter in 2020 Q4 would qualify for the ERC in all three quarters.

20. For quarters in 2021, employers qualify for the ERC under the decline-in-gross-receipts test if their gross receipts for the quarter decreased by more than 20 percent compared to the corresponding quarter in 2019. I.R.C. § 3134(c)(2)(A). *For example*, if an employer had $100,000 in gross receipts in the second quarter of 2019 and less than $80,000 in gross receipts in the second quarter of 2021, the employer qualifies for the ERC for the second quarter of 2021.

21. For 2021, there is also an election rule that allows employers to elect to qualify for the ERC in any quarter based on a greater than 20 percent reduction of gross receipts in the immediately preceding quarter. I.R.C. § 3134(c)(2)(B). *For example*, suppose an employer has gross receipts of 79% of the corresponding quarter in 2020 Q4, 88% of the corresponding quarter in 2021 Q1, 78% of the corresponding quarter in 2021 Q2, and 138% of the corresponding quarter in 2021 Q3. This employer qualifies for the ERC in all three 2021 quarters:

- The employer qualifies in 2021 Q1 under the alternative quarter election rule based on the more-than-20% reduction in gross receipts in 2020 Q4;

- the employer qualifies in 2021 Q2 without election based on a more than 20% decline in gross receipts; and

- the employer qualifies in 2021 Q3 under the alternative election rule based on the more-than-20% reduction in gross receipts in 2021 Q2.

I.R.C. § 3134(c)(2)(A) & (B); IRS Notice 2021-49; see also IRS ERC Training Guide 3-45.

### D. *Full or Partial Suspension of Operations*

22. A second way an employer can be an "eligible employer" and thus qualify for the ERC is by having its operations "fully or partially suspended during the calendar quarter due to orders from an appropriate governmental authority limiting commerce, travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID-19)." I.R.C. § 3134(c)(2)(A)(ii)(I); *see also* CARES Act § 2301(c)(2)(A)(i) (same).

23. According to IRS guidance, a business is partially suspended "if, under the facts and circumstances, more than a nominal portion of its business operations are suspended by a governmental order." IRS Notice 2021-20. The same notice provides, as a safe harbor, that

> a portion of an employer's business operations will be deemed to constitute more than a nominal portion of its business operations if either (i) the gross receipts from that portion of the business operations is not less than 10 percent of the total gross receipts (both determined using the gross receipts of the same calendar quarter in 2019), or (ii) the hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business (both determined using the number of hours of service performed by employees in the same calendar quarter in 2019).

*Id.*

### E. *Qualified Wages*

24. To receive the ERC, an eligible employer must also pay "qualified wages." *See* CARES Act § 2301(c)(3); I.R.C. § 3134(c)(3).

25. Qualified wages are wages and compensation an eligible employer pays to some or all employees during the relevant period, including qualified health plan

expenses that are properly allocable to an employee. CARES Act § 2301(c)(3)(C) & (5); I.R.C. § 3141(c)(3)(ii) & (4).

26. For purposes of determining the average number of full-time employees, a full-time employee is an employee who, with respect to any month in 2019, had an average of at least 30 hours of service per week or 130 hours of service in the month. CARES Act § 2301(c)(3)(A)(i) (incorporating I.R.C. § 4980H); I.R.C. § 3134(c)(3)(A)(i) (same); IRS Notice 2021-49. Under IRS guidance, the average number of full-time employees is determined by taking the sum of the number of full-time employees in each calendar month during which the employer operated in 2019 and dividing that number by the number of months during which the employer operated in 2019. IRS Notice 2021-20, Answer 31; *see also* IRS ERC Training Guide 3-31.

27. For 2020, whether "some or all" wages are qualified wages depends on the size of the employer. For eligible employers that averaged 100 or fewer full-time employees in 2019, qualified wages include all wages paid to any employee during a calendar quarter in which there is a significant decline in gross receipts or the employer experienced a full or partial suspension of its operations. CARES Act § 2301(c)(3)(A)(ii).

28. For 2021, the rules for determining qualified wages are the same as for 2020 except that the question whether "some or all" wages are qualified wages depends on whether the employer averaged more or less than 500 full-time employees in 2019. I.R.C. § 3134(c)(3)(A).

### F. *Amount of Credit*

29. Employers who qualify for the ERC for 2020 may receive a credit of up to $5,000 per employee for the year; employers who qualify for the ERC for 2021 may receive a credit of up to $7,000 per employee for each quarter in which they qualify.

30. For 2020, the ERC is equivalent to 50% of the qualified wages that an eligible employer pays in any quarter. CARES Act § 2301(a). But the maximum per-employee qualified wages that can be taken into account in determining the credit for 2020 is $10,000 for the year. CARES Act § 2301(b)(1). Thus, an eligible employer that paid all of its employees at least $10,000 in qualified wages would be entitled to a $5,000 credit for the qualified wages it paid each of its employees. *For example*, an eligible employer that paid qualified wages of at least $10,000 to 95 employees in 2020 is entitled to an ERC for 2020 of $475,000.

31. For 2021, the ERC is equivalent to 70% of the qualified wages that an eligible employer pays in any quarter. I.R.C. § 3134(a). And the maximum per-employee qualified wages that can be taken into account in determining the credit for 2020 is $10,000 per quarter. I.R.C. § 3134(b)(1). Thus, an eligible employer that paid all of its employees at least $10,000 in qualified wages for each of the first three quarters of 2021 would be entitled to a $7,000 credit for the qualified wages it paid each of its employees in each of those quarters. *For example*, an eligible employer that paid qualified wages of at least $10,000 to 95 employees in each of the first three quarters of 2021 is entitled to an ERC for 2021 of $1,995,000.

32. In this case, Plaintiff is an eligible employer who paid qualified wages and suffered a significant decline in gross receipts such that Plaintiff was entitled to an

ERC. Yet to date, the Defendant has failed to pay the ERCs to which Plaintiff is entitled.

33. Plaintiff brings this suit to recover the ERCs wrongfully withheld by the Defendant.

## V. CAUSES OF ACTION

### *COUNT 1: REFUND FOR REDUCTION IN GROSS RECEIPTS*

34. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

35. Plaintiff is entitled to a tax refund for ERCs under CARES Act § 2301 and I.R.C. § 3134 based on a reduction in its gross receipts as set forth below.

### A. *Plaintiff is an eligible employer.*

36. Plaintiff is in the business of providing legal services. Thus, Plaintiff meets the initial eligible employer requirements of CARES Act § 2301(c)(2)(A)(i); I.R.C. § 3134(c)(2)(A)(i).

37. The aggregation rules in CARES Act § 2301(d), I.R.C. § 3134(d), are inapplicable because Plaintiff is not a member of a controlled group of corporations or trades or businesses under common control under IRC §§ 52(a) or (b), or a member of an affiliated service group under IRC § 414(m), or otherwise aggregated under IRC § 414(o).

38. Plaintiff averaged fewer than 100 employees in 2019. *See* CARES Act § 2301(c)(3)(A)(i) & (ii); I.R.C. § 3134(c)(3)(A); IRS Notice 2021-20. Thus, all of the

wages Plaintiff paid to its employees during the quarters at issue are qualified wages. *Id.*

### B. Plaintiff meets the significant-decline-in-gross-receipts test.

39. Plaintiff satisfies the statutory significant-decline-in-gross-receipts test for the third and fourth quarters of 2020 and for the second and third quarters of 2021.

40. Based on Plaintiff's records, here are Plaintiff's gross receipts for the quarters relevant to Plaintiff's ERC claims based on the decline-in-gross-receipts test:

|  | **Q1** | **Q2** | **Q3** | **Q4** |
|---|---|---|---|---|
| **2019** | | 1,648,614.75 | 5,071,397.75 | |
| **2020** | | | 1,706,301.75 | 1,468,801.75 |
| **2021** | | 1,184,401.20 | 1,952,980.20 | |

41. Plaintiff experienced the required decline in gross receipts for the third quarter of 2020 because its gross receipts for that quarter were less than 50% of its gross receipts for the third quarter of 2019. CARES Act § 2301(c)(2)(B).

42. Plaintiff experienced the required decline in gross receipts for the fourth quarter of 2020 because its gross receipts for the third quarter of 2020 are less than 50% of the same calendar quarter in 2019 and Plaintiff's 2020 qualification thus continues until "the calendar quarter following the first calendar quarter beginning after" the second quarter of 2020 "for which gross receipts of such employer are greater than 80 percent of gross receipts for the same calendar quarter in the prior year." CARES Act § 2301(c)(2)(B)(ii).

43. Plaintiff experienced the required decline in gross receipts for the second quarter of 2021 because its gross receipts for that quarter were less than 80% of its gross receipts for the second quarter of 2019. I.R.C. § 3134(c)(2)(A)(ii)(II).

44. Plaintiff experienced the required decline in gross receipts for the third quarter of 2021 because its gross receipts for that quarter were less than 80% of its gross receipts for the third quarter of 2019. I.R.C. § 3134(c)(2)(A)(ii)(II). Alternatively, Plaintiff experienced the required decline in gross receipts for the third quarter of 2021 because its gross receipts for the immediately preceding calendar quarter were less than 80% of its gross receipts for the same calendar quarter in 2019. I.R.C. § 3134(c)(2)(B)(i).

### C. Plaintiff paid qualified wages.

45. Plaintiff paid at least $10,000 in qualified wages to 31 employees during the relevant quarters in 2020 in which Plaintiff qualified as an eligible employer under CARES Act § 2301(c)(2)(B).

46. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $350.00 to $8,653.85) to 7 other employees during the relevant quarters in 2020 in which Plaintiff qualified as an eligible employer under CARES Act § 2301(c)(2)(B).

47. Plaintiff paid a total of $331,899.53 in wages that can be taken into account in determining the credit during the relevant quarters in 2020 in which Plaintiff qualified as an eligible employer under CARES Act § 2301(c)(2)(B).

48. Plaintiff paid at least $10,000 in qualified wages to 19 employees during the first quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

49. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $9,903.86 to $875) to 14 other employees during the first quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

50. Plaintiff paid a total of $288,231.64 in wages that can be taken into account in determining the credit during the first quarter of 2021.

51. Plaintiff paid at least $10,000 in qualified wages to 24 employees during the second quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

52. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $7,071.75 to $450) to 11 other employees during the second quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

53. Plaintiff paid a total of $296,350.40 in wages that can be taken into account in determining the credit during the second quarter of 2021.

54. Plaintiff paid at least $10,000 in qualified wages to 26 employees during the third quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

55. Plaintiff paid less than $10,000 in qualified wages (amounts ranging from $9,980.34 to $1,615.38) to 11 other employees during the third quarter of 2021 during which Plaintiff qualified as an eligible employer under I.R.C. § 3134(c)(2)(A) or (B), as described above.

56. Plaintiff paid a total of $307,372.68 in wages that can be taken into account in determining the credit during the third quarter of 2021.

57. None of the wages described above include amounts taken into account as payroll costs for Paycheck Protection Program (PPP) loan forgiveness. Plaintiff received PPP loan forgiveness but excluded from the eligible wages discussed above at least the minimum amount of qualified wages included in the payroll costs reported on the PPP Loan Forgiveness Application necessary to obtain the loan forgiveness received.

58. The amounts included in the qualified wages described above also do not include wages taken into account for the COVID-19 related paid sick and family leave credits under sections 7001 and 7003 of the Families First Coronavirus Response Act, or wages taken into account for credits under I.R.C. §§ 41, 45A, 45P, 45S, 1396, 3131, or 3132. Nor are the wages described above excluded from wages that may be included in qualified wages for any other reason.

59. In calculating qualified wages, Plaintiff determined each employee's gross wages during the relevant quarters (the quarters discussed above for which ERC claim(s) at issue in this lawsuit were made) including qualified health plan expenses.

### D. Plaintiff has paid employment taxes and made a proper claim for refund.

60. Plaintiff filed and paid employment taxes and later claimed the ERC(s) at issue here using the procedures the IRS designated for such claims.

61. Plaintiff filed and paid employment taxes for the quarters at issue, sending IRS Form 941 and the amounts owed for those employment taxes to the appropriate IRS Service Center.

| Quarters | Dates Forms 941 were filed with employment tax payment | Amount of employment tax payment | IRS Service Center where Forms 941 and payment were made/filed |
|---|---|---|---|
| 2020 Q3 | 10/15/2020 | $213,158.86 | Cincinnati, OH |
| 2020 Q4 | 11/11/2021 | $265,621.89 | Cincinnati, OH |
| 2021 Q1 | 11/11/2021 | $225,084.28 | Cincinnati, OH |
| 2021 Q2 | 11/11/2021 | $277,703.73 | Cincinnati, OH |
| 2021 Q3 | | | Cincinnati, OH |

62. Plaintiff also filed refund claims and claimed ERCs using IRS Form 941-X, which it sent to the IRS Service Center in Cincinnati, Ohio, on January 17, 2024.

63. The amount of refund to which Plaintiff is entitled is as follows:

| 2020 | $165,949.77 | | |
|---|---|---|---|
| Q | Q1 | Q2 | Q3 |
| 2021 | $201,762.15 | $207,445.28 | $215,160.88 |

### *E. Defendant has failed to pay Plaintiff's valid ERC refund claim.*

64. Plaintiff filed the attached timely refund claims for ERCs totaling $790,318.08, of which $588,555.93 is attributable to Plaintiff's decline in gross receipts over the relevant quarters.

65. As established above, Plaintiff is legally entitled to that money, yet Defendant nonetheless has failed to process Plaintiff's ERC claims for more than 6 months.

66. Because Plaintiff has established entitlement to the ERCs at issue here, the United States should be compelled to pay the ERCs plus statutory interest to Plaintiff under I.R.C. § 7422.

67. Defendant must pay interest on the refund amount Defendant owes Plaintiff using the interest rate established under I.R.C. § 6621. *See* I.R.C. § 6611(a). This interest is owed "from the date of the overpayment to a date (to be determined by the Secretary) preceding the date of the refund check by not more than 30 days." I.R.C. § 6611(b)(2). Thus, Defendant owes interest from the dates on which Plaintiff paid the employment taxes against which the ERC is credited.

### *COUNT II: REFUND FOR PARTIALLY SUSPENDED OPERATIONS*

68. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

69. Plaintiff is also entitled to a tax refund based on an ERC under I.R.C. § 3134 for partially suspended operations during the entire first quarter of 2021 as set forth below.

70. Plaintiff's operations were partially suspended during the first quarter of 2021 "due to orders from an appropriate governmental authority limiting commerce,

travel, or group meetings (for commercial, social, religious, or other purposes) due to the coronavirus disease 2019 (COVID–19)." I.R.C. § 3134(c)(2)(A)(ii)(I).

71. Plaintiff represents victims injured by automobile accidents, construction accidents, medical malpractice, and handles other types of personal injury lawsuits throughout Pennsylvania.

72. During the first quarter of 2021, there were governmental orders in place that suspended jury trials in Delaware County, Lehigh County, Philadelphia County, Lancaster County, Chester County, Dauphin County, Erie County, Lackawanna County, Luzerne County, Westmoreland County, York County, Center County, Monroe County, Washington County, and Allegheny County. In addition to suspending jury trials, the government orders suspended other in-court activities, limited access to e-file systems, and delayed discovery deadlines, all adversely impacting fee generation. Plaintiff's litigation practice involves jury trials in these counties.

73. Plaintiff qualifies for the Notice 2021-20 safe harbor because more than 10 percent of Plaintiff's total gross receipts in the first quarter of 2019 resulted from jury cases filed in Pennsylvania counties that suspended jury trials and other activities during the first quarter of 2021. Indeed, Plaintiff had gross receipts in the first quarter of 2019 from docketed civil jury-trial cases in Delaware County, Lehigh County, Philadelphia County, Lancaster County, Chester County, York County, Franklin County, and Allegheny County. Thus, the total gross receipts from the suspended portion of Plaintiff's "business operations is not less than 10 percent of the

total gross receipts (. . . determined using the gross receipts of the same calendar quarter in 2019)."

74. Even if Plaintiff did not qualify for the Notice 2021-20 safe harbor, the governmental orders that prevented Plaintiff from working on or receiving revenue from jury trials and related matters in many of places in which Plaintiff practices "partially suspended" the operation of Plaintiff's business under I.R.C. § 3134(c)(2)(A)(ii)(I). Because *part* of Plaintiff's operations were suspended in the first quarter of 2021, Plaintiff's operations were partially suspended and Plaintiff qualifies for the ERC in that quarter. Nothing in the statute requires a suspension of 10 percent.

75. IRS guidance interprets Section 3134(c)(2)(A)(ii)(I) to require suspension of a "more than nominal portion" of its business. *See* Notice 2021-10. In this context, "nominal" means "trifling." *See* Black's Law Dictionary (12th ed. 2024). The suspension of Plaintiff's operations involving jury trials in Delaware County, Lehigh County, Philadelphia County, Lancaster County, Chester County, Dauphin County, Erie County, Lackawanna County, Luzerne County, Westmoreland County, York County, Center County, Monroe County, Washington County, and Allegheny County was not trifling. To the extent that the government now attempts to interpret "partially suspended" to *require* a suspension of 10 percent of an employer's operations or some similar standard, such interpretation is inconsistent with both the language of the statute and the ordinary meaning of the IRS's own "more than nominal portion" standard. Plaintiff meets the partial suspension test because Plaintiff's operations were suspended in part. Plaintiff can be eligible without

meeting a Notice 2021-10 safe harbor and even if the suspension impacted less than 10 percent of gross receipts or employee time.

76. As explained above, Plaintiff filed the attached timely refund claims for ERCs totaling $790,318.08, of which $201,762.15 is attributable to Plaintiff's partial suspension of operations during the first quarter of 2021.

77. As established above, Plaintiff is legally entitled to that money, yet Defendant nonetheless has failed to process Plaintiff's ERC claims for more than 6 months.

78. Because Plaintiff has established entitlement to the ERC for the first quarter of 2021, the United States should be compelled to pay the ERCs plus statutory interest to Plaintiff under I.R.C. § 7422.

## *COUNT III: ATTORNEYS' FEES AND ADMINISTRATIVE COSTS*

79. Plaintiff repeats, realleges, and incorporates by reference herein all preceding paragraphs as though fully set forth herein.

80. In addition to its refund and statutory interest, Plaintiff is also entitled to its administrative costs—including attorneys' fees.

81. The Defendant must pay reasonable litigation and administrative costs to a prevailing party unless its position in the proceeding was "substantially justified." I.R.C. § 7430(c)(4)(B).

82. Here, the Defendant's position was *not* substantially justified.

83. Plaintiff's entitlement to the ERCs at issue is straightforward. Indeed, for Count 1 (decline in gross receipts) it is just a math question. Defendant's continuation of this litigation and refusal to promptly pay the ERCs is therefore not substantially justified.

19

## VI.    JURY TRIAL DEMAND

84. Plaintiff demands a jury trial on all issue so triable.

## VII.    PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against Defendant, the United States of America, for:

(A)    A tax refund of $790,318.08 for the ERCs at issue in this case and described above or such greater amount as is legally refundable plus statutory interest;

(B)    Reasonable litigation and administrative costs, including attorneys' fees, as allowed by law; and

(C)    All other further relief to which Plaintiff may be entitled.

Dated: August 8, 2024

Respectfully submitted:

/s/ *Glen E. Frost*
GLEN E. FROST (328622)
Frost & Associates, LLC
839 Bestgate Road, suite 400
Annapolis, MD 21401
Glen.Frost@frosttaxlaw.com

NATHANIEL S. POLLOCK
(*motion for pro hac vice forthcoming*)
PAUL E. HAROLD
(*motion for pro hac vice forthcoming*)
SouthBank Legal
100 East Wayne Street, Suite 300
South Bend, IN 46615
Tel.: (574) 968-0760
Fax: (574) 968-0761
npollock@southbank.legal
pharold@southbank.legal

*Attorneys for Plaintiff*